# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN
_____

In re the bankruptcy of:          Chapter 13
      WARREN C. KRUEGER,
               Debtor.

                               Case Number: 10-20528-mdm

_____


Warren C. Krueger,
          Plaintiff,

   v.                             Adversary No.

CitiMortgage Inc.
P.O. Box 140609
Irving Tx  75019-0609

CitiMortgage Inc
1111 North Point Drive
Bld 4, Suite 100
Coppell, TX 75019
              Defendants.


-------------------------------------------------------------------------------------------------------------
## COMPLAINT PURSUANT TO 11 USC § 506 TO DETERMINE
THE VALUE OF SECURITY TO AVOID THE LIEN OF REAL ESTATE OWNED BY
THE DEBTOR AND REDUCE THE DEFENDANT'S CLAIM TO UNSECURED
-------------------------------------------------------------------------------------------------------------

The debtors, Warren C. Krueger, by their attorney, Roy Hegard, hereby request avoidance of the real estate mortgage lien of the defendant  CitiMortgage Inc., its successors and/or assigns pursuant to 11 U.S.C. § 506(a) as follows:

1. The debtor filed a Chapter 13 bankruptcy petition on January 18, 2010 in case number 10-20528 in the Eastern District of Wisconsin.

2. On the date of the Chapter 13 filing, the debtor owned, and continues to own, the real estate located at 344 4th Street, Neenah, WI, 54956 which is more particularly described as:

   LOT EIGHTY THREE (83) BLOCK "B", PLAT OF TOWN OF THE ISLAND, FIFTH WARD, CITY OF NEENAH, WINNEBAGO COUNTY, WISCONSIN, EXCEPTING THEREFROM THE WEST 60 FEET THEREOF.
   A.P.N.: 0500540000

Attorney Roy Hegard               1
128 State St., PO Box 1336
Oshkosh, WI 54903-1336
(920) 233-2500
FAX: (920) 233-5252
Hegardlaw@gmail.com

3. The debtor entered into a second mortgage with the Defendant which was recorded on March 8, 2006 in the amount of $60,500.00.

4. The Defendant has filed a Proof of Claim in the amount of $61,898.37. A copy of the Proof of Claim, Claim No. 3, (Exhibit #1 of this Complaint) is attached hereto and incorporated herein by reference.

5. The Court has jurisdiction over this proceeding pursuant to 28 USC §1334 and §157(b)(2)(K). This is a core proceeding.

6. The value of the debtor's real estate subject to the mortgage on the date of the filing of this bankruptcy was approximately $97,000.00 after repairs and costs of sales. A copy of the 2009 real estate tax information (Exhibit #2 of this Complaint) is attached hereto and incorporated herein by reference.

7. The debtor entered into a first mortgage with The State Bank of Newburg which was recorded on March 6, 2006. The amount of the first mortgage balance as of the date of filing per its Proof of Claim (#12) was $130,028.61. A copy of the Proof of Claim (Exhibit #3 of this Complaint) is attached hereto and incorporated herein by reference.

8. There is no value of the interest of the Defendants in the real estate of the debtor.

9. As the amount of the first mortgage exceeds the value of the property, the claim of the Defendant is unsecured.

10. The Chapter 13 trustee has paid $2,672.18 to the defendant as a secured creditor.

WHEREFORE, the debtor requests judgment against the defendant for:

1. Avoiding its lien on the real estate located at 344 4th Street, Neenah, WI, 54956, Oshkosh, Wisconsin as more particularly described as:

   LOT EIGHTY THREE (83) BLOCK "B", PLAT OF TOWN OF THE ISLAND, FIFTH WARD, CITY OF NEENAH, WINNEBAGO COUNTY, WISCONSIN, EXCEPTING THEREFROM THE WEST 60 FEET THEREOF.
   A.P.N.: 0500540000

2. Return to the trustee the amount of $2,672.18 which was paid to the defendant as a secured claim.

3. Reduce the defendant's claim to unsecured.

4. Such other relief as the court may deem just and equitable.

Attorney Roy Hegard
128 State St., PO Box 1336
Oshkosh, WI 54903-1336
(920) 233-2500
FAX: (920) 233-5252
Hegardlaw@gmail.com

2

Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 2 of 42

Dated this 12nd day of September, 2013.


 /s/ Roy Hegard
Roy Hegard
Attorney for Debtors
State bar #1030836




<u>ADDRESS:</u>
128 State St., PO Box 1336
Oshkosh, WI  54903-1336
(920) 233-2500
FAX:  (920) 233-5252
Hegardlaw@gmail.com

Attorney Roy Hegard                                3
128 State St., PO Box 1336
Oshkosh, WI 54903-1336
(920) 233-2500
FAX: (920) 233-5252
Hegardlaw@gmail.com      Case 13-02707-mdm      Doc 1      Filed 09/13/13      Page 3 of 42

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT  Eastern District of Wisconsin, Milwaukee Division | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  WARREN C. KRUEGER -- SS No. XXX-XX-7968 | Case Number:  10-20528 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CitiMortgage, Inc.

Name and address where notices should be sent:

CitiMortgage, Inc.
PO Box 140609

Irving, TX 75019-0609
Telephone number:  (866)613-5636

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
  *(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):
CitiMortgage, Inc.
P. O. Box 6941

The Lakes, NV 88901-6941
Telephone number:  (866)613-5636

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $                61,898.37

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: _____
  (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____ 3678

  3a. Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

4. Secured Claim    (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☒ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$_____    Annual Interest Rate_____ 6.57370 %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $        3,885.41    Basis for perfection: _____

Amount of Secured Claim: $        61,898.37    Amount Unsecured: $                0

6. Credits:    The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents:  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_____).

Amount entitled to priority:

$                0

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:  02/01/2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  /s/Matthew D. Irby Bankruptcy Specialist | FOR COURT USE ONLY  **EXHIBIT**  **#1** _____ |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152*

# Exhibit 'A'

Case No.: 10-20528

Debtors: WARREN C. KRUEGER -- SS No. XXX-XX-7968

Address: 334 4TH STREET

NEENAH, WI 54956-0000

Loan No.:3678

On filing petition 01/18/10 debtor(s) owed claimant $61,898.37.

ARREARAGES owed as of 01/18/10, the date of filing of the petition.

| From | To | Type of Charge | # | Unit Charge | Total | |
|------|-----|----------------|---|-------------|-------|---|
| 08/01/2009 | 10/01/2009 | Payment @ 6.57370% | 3 | 666.49 | | 1,999.47 |
| 11/01/2009 | 01/01/2010 | Payment @ 6.57370% | 3 | 631.82 | | 1,895.46 |
| | | Accrued Late Charge | - | - | | 35.48 |
| | | Appraisal | - | - | | 84.00 |
| | | Escrow Shortage | - | - | | 143.62 |
| | | Late Charge | - | - | | 77.88 |
| | | Property Inspection | - | - | | 21.50 |
| | | | - | - | | - |
| | | | | Subtotal: | | 4,257.41 |
| | | | | Less Unapplied Funds: | | 372.00 |
| | | | | **TOTAL:** | | **3,885.41** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of the filing of the bankruptcy.

Late charges accrue to the account when payments are received 0 days past the payment due date.

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Posted By Fannie Mae)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| MARCH 2, 2006 | WEST ALLIS | WISCONSIN |
|---|---|---|
| [Date] | [City] | [State] |

334 4TH STREET, NEENAH, WISCONSIN 54956
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 60,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FIRST FUNDING GROUP, LLC, A WISCONSIN CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.680 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on MAY 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on APRIL 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2323 S 109TH STREET, SUITE 175, WEST ALLIS, WISCONSIN 53227

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 472.93 . This amount may change.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3518 1/01
For Use in WISCONSIN Only          Page 1 of 5

DocMagic ℮Ⓕⓞⓡⓜⓢ 800-649-1362
www.docmagic.com

Wi3518.not

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of APRIL, 2009 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 850/1000 percentage points ( 4.850 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.680 % or less than 8.680 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.680 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3518 1/01
For Use in WISCONSIN Only                      Page 2 of 5

*DocMagic* ☎ 800-649-1362
www.docmagic.com

WI3518.mzn

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3518 1/01
For Use in WISCONSIN Only                                                Page 3 of 5

DocMagic eServices 800-649-1362
www.docmagic.com

W13518.not

the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3518 1/01
For Use in WISCONSIN Only

DocMagic ☎ *****: 800 649 1362
www.docmagic.com

Page 4 of 5

WI3518.nor

Case 10-20528-mdm    Claim 3 Part 2    Filed 02/01/10    Desc DOCS    Page 4 of 19
Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 9 of 42

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)         _____ (Seal)
WARREN C. KRUEGER            -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                             -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                             -Borrower                                         -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX          DocMagic €Finitecro 800-649-1362
(AS POSTED BY FANNIE MAE)--Single Family--Fannie Mae MODIFIED INSTRUMENT          www.docmagic.com
Form 3518 1/01
For Use in WISCONSIN Only                      Page 5 of 5

Wi3518.not

REGISTER'S OFFICE
WINNEBAGO COUNTY, WI
RECORDED ON

03/08/2006  11:08AM

JULIE PAGEL
REGISTER OF DEEDS

RECORDING FEE      39.00
TRANSFER FEE
# OF PAGES         15

# MORTGAGE

Return Address: FIRST FUNDING GROUP, LLC
2323 S 109TH STREET, SUITE 175
WEST ALLIS, WISCONSIN 53227

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 2, 2006                , together with all Riders to this document.
(B) "Borrower" is WARREN C. KRUEGER A SINGLE PERSON

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is FIRST FUNDING GROUP, LLC

Lender is a                                                              organized
and existing under the laws of  WISCONSIN
Lender's address is 2323 S 109TH STREET, SUITE 175, WEST ALLIS,
WISCONSIN 53227
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated MARCH 2, 2006
The Note states that Borrower owes Lender SIXTY THOUSAND FIVE HUNDRED AND 00/100
                              Dollars (U.S. $ 60,500.00                )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2036                  .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01                                    Page 1 of 12

DocMagic eRorms  800-649-1362
www.docmagic.com

Wi3050.mtg

Case 10-20528-mdm    Claim 3 Part 2    Filed 02/01/10    Desc DOCS    Page 6 of 19
Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 11 of 42

**(I)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** "Escrow Items" means those items that are described in Section 3.

**(L)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the

COUNTY     of WINNEBAGO                    :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

LOT EIGHTY THREE (83) BLOCK "B", PLAT OF TOWN OF THE ISLAND, FIFTH WARD, CITY OF NEENAH, WINNEBAGO COUNTY, WISCONSIN, EXCEPTING THEREFROM THE WEST 60 FEET THEREOF.

which currently has the address of 334 4TH STREET
                                                    [Street]

NEENAH                        , Wisconsin     54956          ("Property Address"):
    [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

---

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require

Wi3050.mtg

that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01

Page 4 of 12

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Wi3050.mzg

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 5 of 12

DocMagic *eFarms* 800-649-1362
www.docmagic.com

WI3050.mtg

Case 10-20528-mdm    Claim 3 Part 2    Filed 02/01/10    Desc DOCS    Page 10 of 19
Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 15 of 42

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 6 of 12

*DocMagic eRorms* 800-649-1362
www.docmagic.com

Wi3050.mtg

previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 7 of 12

DocMagic *EForms* 800-649-1362
www.docmagic.com

Wi3050.mtg

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 8 of 12

*DocMagic* *EForms* 800-649-1362
www.docmagic.com

Wi3050.mtg

Case 10-20528-mdm    Claim 3 Part 2    Filed 02/01/10    Desc DOCS    Page 13 of 19

Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 18 of 42

as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 9 of 12

*DocMagic* 800-649-1362
www.docmagic.com

WI3050.mtg

Case 10-20528-mdm   Claim 3 Part 2   Filed 02/01/10   Desc DOCS   Page 14 of 19
Case 13-02707-mdm   Doc 1   Filed 09/13/13   Page 19 of 42

enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 10 of 12

*DocMagic ΦRmmms* 800-649-1362
www.docmagic.com

WI3050.mtg

Case 10-20528-mdm    Claim 3 Part 2    Filed 02/01/10    Desc DOCS    Page 15 of 19

Case 13-02707-mdm    Doc 1    Filed 09/13/13    Page 20 of 42

or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01
Page 11 of 12

*DocMagic* €Rorms 800-649-1362
www.docmagic.com

Wi3050.mig

Case 10-20528-mdm   Claim 3 Part 2   Filed 02/01/10   Desc DOCS   Page 16 of 19
Case 13-02707-mdm   Doc 1   Filed 09/13/13   Page 21 of 42

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_(signature)_ _____ (Seal)
WARREN C. KRUEGER                          -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)                     _____ (Seal)
                           -Borrower                           -Borrower

_____ (Seal)                     _____ (Seal)
                           -Borrower                           -Borrower

Witness:                                   Witness:

_____            _____

————————————— [Space Below This Line For Acknowledgment] —————————————

State of Wisconsin
County of _Outagamie_

This instrument was acknowledged before me on
by WARREN C. KRUEGER

_(signature)_ _____
Diane J. Welhause          Notary Public

My commission expires:
July 1, 2007

(Seal)

This instrument was drafted by:
MELISSA WARD

WISCONSIN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3050 1/01                     Page 12 of 12
DocMagic eRemix 800-649-1362
www.docmagic.com

WI3050.mtg

REGISTER'S OFFICE
WINNEBAGO COUNTY, WI
RECORDED ON

06/06/2006 03:47PM

JULIE PAGEL
REGISTER OF DEEDS

RECORDING FEE $13.00
TRANSFER FEE 0.00
# OF PAGES 2

PREPARED BY & RETURN TO:

S. A. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, FIRST FUNDING GROUP, LLC. 2323 S 109th Street, Suite 350, West Allis, WI 53227 (Assignor) by these presents does assign, and set over, without recourse, to CITIFINANCIAL MORTGAGE COMPANY, INC. 1111 Northpoint Drive, Bldg 4, Suite 100, Coppell, TX 75019 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by WARREN C KRUEGER, A SINGLE PERSON to FIRST FUNDING GROUP, LLC. Said mortgage Dated: 3/2/2006 is recorded in the State of WI, County of Winnebago as Document          AMOUNT: $ 60,500.00  SEE ATTACHED EXHIBIT A

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: June 6, 2006

FIRST FUNDING GROUP, LLC

By: _____

M. E. Wileman, Authorized Signator

KRUEGER CITI JJB *06019536*

State of Texas, County of Tarrant

On 6/6/2006, before me, the undersigned, personally appeared M. E. Wileman, who acknowledged that he/she is Authorized Signator officer of FIRST FUNDING GROUP, LLC. and that he/she executed the foregoing Instrument and that such execution was done as the free act and deed of FIRST FUNDING GROUP, LLC.

_____

Notary public, A. Tucker
My commission expires: April 20, 2010

A. TUCKER
Notary Public, State of Texas
My Commission Expires
April 20, 2010

WI  Winnebago

# State of New York
# Department of State

} ss:

I hereby certify, that Certificate of Merger, CITIFINANCIAL MORTGAGE COMPANY, INC., with and into CITIMORTGAGE, INC., was filed with this office 06/29/2006. The effective date of the merger was 07/01/2006.

A Certificate of Amendment BT INTERNATIONAL TRADING CORPORATION, changing

CITIMORTGAGE, INC., was filed 05/04/2005.

***

*WITNESS my hand and the official seal of the Department of State at the City of Albany, this 30th day of June  two thousand and six.*

*Special Deputy Secretary of State*

CITY TREASURER
CITY OF NEENAH
P.O. BOX 582
NEENAH, WI 54957-0582

# STATE OF WISCONSIN
# REAL PROPERTY TAX BILL FOR 2009
## City of Neenah

PROPERTY ID/PROPERTY ADDRESS        05-0054-00-00      334 FOURTH ST

KRUEGER, WARREN
334 FOURTH ST
NEENAH WI 54956

| Assessed Value Land | Ass'd Value Improvements | Total Assessed Value | | Ave. Assmt. Ratio | Net Assessed Value Rate (Does NOT reflect Credits) |
|---|---|---|---|---|---|
| 14,100 | 95,200 | 109,300 | | .9575 | .0237630 |

| Est. Fair Mkt Land | Est. Fair Mkt. Improvements | Total Est. Fair Mkt. | A Star in This Box Means Unpaid Prior Year Taxes | School Taxes Reduced by School Levy Tax Credit |
|---|---|---|---|---|
| 14,700 | 99,400 | 114,100 | | 149.19 |

| Tax Jurisdiction | 2008 Est. State Aids Allocated Tax Dist. | 2009 Est. State Aids Allocated Tax Dist. | 2008 Net Tax | 2009 Net Tax | % Tax Change |
|---|---|---|---|---|---|
| STATE OF WISCONSIN | | | 19.20 | 19.38 | .9 |
| WINNEBAGO COUNTY | 972151 | 951833 | 615.86 | 634.22 | 3.0 |
| CITY OF NEENAH | 3831665 | 3635172 | 916.79 | 925.77 | 1.0 |
| NEENAH SCHOOL DIST | 18311601 | 17809370 | 755.91 | 822.07 | 8.8 |
| VOC. SCHOOL DIST | 715490 | 779929 | 190.32 | 195.87 | 2.9 |
| | ========= | ========= | =============== | ============= | |
| TOTAL | 23830907 | 23176304 | 2,498.08 | 2,597.31 | 4.0 |
| First Dollar Credit | | | 31.45 | 60.40 | |
| Lottery/Gaming Credit | | | 72.58 | 68.90 | -5.1 |
| Net Property Tax | | | 2,394.05 | 2,468.01 | 3.1 |

| Make Check Payable to: City of Neenah | Full Payment Due On or Before January 31 2010 | | Net Property Tax | 2,468.01 |
|---|---|---|---|---|
| | $ | 2,873.56 | UNPD WATER | 405.55 |
| 1st Installment due - January 31,2010 | $ | 970.90 | | |
| 2nd Installment due - March 31,2010 | $ | 634.22 | | |
| 3rd Installment due - May 31,2010 | $ | 634.22 | | |
| 4th Installment due - July 31,2010 | $ | 634.22 | SPECL TOTL | 405.55 |

05-0054-00-00
PLAT OF THE TOWN OF THE
ISLAND
E 105 FT OF LOT 83 BLK B

IMPORTANT:  Correspondence should refer to tax number - See reverse side for important information. Be sure this description covers your property. This description is for property tax bill only and may not be a full legal description.

**TOTAL DUE**  FOR FULL PAYMENT
Pay by January 31, 2010

$        2,873.56

Warning: If not paid by the due dates, installment option is lost and total tax is delinquent subject to interest and if applicable, penalty. (*See reverse side)

EXHIBIT #2

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Wisconsin | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Warren C. Krueger | Case Number: 10-20528 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
State Bank of Newburg

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

Attorney Joshua J. Kindkeppel
Eustice, Laffey, Sebranek & Auby, S.C.
P.O. Box 590, Sun Prairie, WI 53590-0590

Telephone number:
(608) 837-7386

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
State Bank of Newburg, Attn: Christopher P. Guse
P.O. Box 20
Newburg, WI 53060

Telephone number: (262) 675-2308

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 189,541.11

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 7968

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $ 97,000.00   Annual Interest Rate 5.5% (Per Stipulation)

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $ None   Basis for perfection: Mortgage

Amount of Secured Claim: $ 97,000.00   Amount Unsecured: $ 33,028.61

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date: May 26, 2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

BY: Christopher P. Guse, Commercial Loan Officer | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

State Bank of Newburg, PO Box 20, Newburg, WI 53060

EXHIBIT
13
tabbies

## EASTERN DISTRICT OF WISCONSIN
## CASE NO: 10-20528
## IN RE: WARREN C. KRUEGER

## ATTACHED ITEMIZED STATEMENT
## STATE BANK OF NEWBURG
## PROOF OF CLAIM

### As of Date of Bankruptcy Filing

| | |
|---|---|
| Principal Amount | $ 165,172.91 |
| Interest | 11,731.27 |
| Late Charges | 4,819.17 |
| Attorneys' Fees | 6,683.00 |
| Costs | 1,134.76 |
| TOTAL . . . . . . . . . . | $189,541.11 |

Sale of Tractor and Trailer[1] on May 4, 2010:
- 2005 Kenworth W900L Conventional Truck/Tractor
  VIN # 1XKWDB9X25J099338; and
- 2006 Doonan Model 482VB14 Step Deck Trailer
  VIN # 1D9BG48216120802

| | |
|---|---|
| Claim Amount as of 1/18/10 | $189,541.11 |
| Less 5/4/10 Sale Proceeds | - 59,512.50 |
| Total Claim Amount | $130,028.61 |

Claim Breakdown (Secured/Unsecured)

| | |
|---|---|
| Secured Claim Amount | $ 97,000.00[2] |
| Unsecured Claim Amount | 33,028.61 |
| Total Claim Amount | $130,028.61 |

---

[1] State Bank of Newburg sold the Tractor and Trailer after it received Relief from Automatic Stay and Abandonment pursuant Bankruptcy Court Order dated March 22, 2010.

[2] $97,000.00 is the stipulated value of the Debtor's real property located at 334 Fourth Street, Neenah, Wisconsin. Said stipulation was filed with the Bankruptcy Court on April 28, 2010 and made an Order of the Court on May 6, 2010.

Loan Number: 00-4465
BUSINESS

| W.C.A. | | 14241 |

© 2006 Wisconsin Bankers Association / Distributed by FIPCO

**BUSINESS NOTE**
(Use only for business purpose loans)

Date checked are applicable.
Boxes not checked are inapplicable.

WARREN C KRUEGER                    September 20, 2007                    $ 130,019.08
                        (Maker)              (Date)

**1. Promise to Pay and Payment Schedule.** The undersigned ("Maker," whether one or more) promises to pay to the order of
STATE BANK OF NEWBURG                                        ("Lender") at 300 CONGRESS DRIVE, P.O. BOX 70,
NEWBURG                        , Wisconsin, the sum of $ 130,019.08                        , plus interest on the unpaid principal
balance, according to the following schedule:
71 equal payment(s) consisting of principal and interest, in the amount of $3,745.30 each, beginning on November 1,
2007 and continuing monthly thereafter, and one (1) final payment consisting of the unpaid principal and all accrued
interest remaining due on October 1, 2013.

**2. Interest Calculation.** This Note bears interest on the unpaid principal balance before maturity:
[Check (a), (b) or (c); only one shall apply.]
(a) ☒ Fixed Rate. At the rate of __12.000__ % per year.
(b) ☐ Stepped Fixed Rate. At the rate ("Note Rate") of __n/a__ % per year until ___n/a___ and ___n/a___ % per year thereafter.
(c) ☐ Variable Rate. At the annual rate ("Note Rate") which shall equal the Index Rate (as defined below), ☐ plus ☐ minus __n/a__
percentage points. However, the Note Rate shall not exceed __n/a__ % per year and shall not be less than __n/a__ % per year, and until the first
change date described below the Note Rate shall be __n/a__ % per year. The Note Rate shall be adjusted as provided below. The Index Rate is:
n/a

The Index Rate may or may not be the lowest rate charged by Lender. The Note Rate shall be adjusted only on the following change dates:
n/a

If the Index Rate ceases to be made available to Lender during the term of this Note, Lender may substitute a comparable index.

(d) ☐ If box (b) or (c) is checked, an adjustment in the Note Rate will result in an increase or decrease in (1) ☐ the amount of each payment of interest,
(2) ☐ the amount of the final payment, (3) ☐ the number of scheduled periodic payments sufficient to repay the Note in substantially equal
payments, (4) ☐ the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and
sufficient to repay this Note by its scheduled maturity date, (5) ☐ the amount of each remaining payment of principal and interest (other than the
final payment) so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date based on
the original amortization schedule used by Lender, plus the final payment of principal and interest, or (6) ☐ n/a

In addition, Lender is authorized to change the amount of periodic payments if and to the extent necessary to pay in full all accrued interest owing on
this Note. The Maker agrees to pay any resulting payments or amounts.
Interest is computed:
(e) ☒ For the actual number of days principal is unpaid on the basis of ☒ a 360 day year (which means that the stated interest rate will be divided by 360
days to arrive at a daily interest rate, and the daily interest rate will be applied to the unpaid principal for the actual number of days principal is unpaid up
to 365 days in a calendar year and 366 days in a leap year) ☐ a 365 day year.
(f) ☐ For the number of days principal is unpaid on the basis of a 365 day year, counting each day as 1/360th of a month and disregarding differences in
lengths of months and years.
(g) ☐ Past due interest shall bear interest from its due date until paid at the interest rate then in effect for this Note.
Unpaid principal and interest bear interest after maturity until paid (whether by acceleration or lapse of time) at the rate(s) ☐ stated  under 2(a) or (c)
above, as applicable, plus __n/a__ percentage points ☒ of __12.000__ % per year, computed on the same basis as the interest rate before maturity. All
payments shall be applied first to accrued and unpaid interest, second to other charges payable by Maker to Lender and third to unpaid principal.

**3. Other Charges.** If any payment (other than the final payment) is not made on or before the __10th__ day after its due date, Lender may collect a
delinquency charge of ☒ __5.00__ % of the unpaid amount ☐ $ n/a           . Maker agrees to pay a charge of $ 25.00
for each check presented for payment under this Note which is returned unsatisfied.

**4. Prepayment.** Full or partial prepayment of this Note ☒ is permitted at any time without penalty ☐ n/a
n/a

All prepayments shall be applied first to accrued and unpaid interest, second to other charges payable by Maker to Lender and third to principal.
THIS NOTE INCLUDES ADDITIONAL PROVISIONS ON PAGE 2.

OTHER PROVISIONS:

                                                            _____(SEAL)
                                                            (Type of Organization)

                                        By: _Warren C Krueger_____(SEAL)
                                            WARREN C KRUEGER

                                        By: _____(SEAL)

                                        By: _____(SEAL)

                                        By: _____(SEAL)

                                        304 4TH ST

                                        NEENAH, WI 54956        (920) 205-2186
                                        (ADDRESS)                (PHONE)

TELEPHONE NO.920-205-2186
SS#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                  FOR LENDER CLERICAL USE ONLY
                                DOUG HEIN

## ADDITIONAL PROVISIONS

**5. Default and Enforcement.** Upon the occurrence of any one or more of the following events of default: (a) Maker fails to pay any amount when due under this Note or under any other instrument evidencing any indebtedness of Maker to Lender, (b) any representation or warranty made under this Note or information provided by Maker to Lender in connection with this Note is or was false or fraudulent in any material respect, (c) a material adverse change occurs in Maker's financial condition, (d) Maker fails to timely observe or perform any of the covenants or duties contained in this Note, (e) any guarantee of Maker's obligations under this Note is revoked or becomes unenforceable for any reason, (f) Maker, Maker's spouse or a surety or guarantor of this Note dies or ceases to exist, (g) an event of default occurs under any agreement securing this Note, or (h) Lender at any time believes in good faith that the prospect of payment or performance under this Note, under any other instrument evidencing any indebtedness of Maker to Lender or under any agreement securing this Note is impaired, then the unpaid balance shall, at the option of Lender, without notice, mature and become immediately payable. The unpaid balance shall automatically mature and become immediately payable in the event any Maker or any surety, indorser or guarantor for any of Maker's obligations under this Note becomes the subject of bankruptcy or other insolvency proceedings. Lender's receipt of any payment on this Note after the occurrence of an event of default shall not constitute a waiver of the default or the Lender's rights and remedies upon such default. To the extent not prohibited by law, Maker consents that venue for any legal proceeding relating to collection of this Note shall be, at Lender's option, the county in which Lender has its principal office in this state, the county in which any Maker resides or the county in which this Note was executed and Maker submits to the jurisdiction of any such court.

**6. Security.** This Note is secured by all existing and future security agreements and mortgages between Lender and Maker, between Lender and any indorser or guarantor of this Note, and between Lender and any other person providing collateral security for Maker's obligations, and payment may be accelerated according to any of them. Unless a lien would be prohibited by law or would render a nontaxable account taxable, Maker grants to Lender a security interest and lien in any deposit account Maker may at any time have with Lender. Lender may, at any time after an occurrence of an event of default, without notice or demand, set-off against any deposit balance or other money now or hereafter owed any Maker by Lender any amount unpaid under this Note.

**7. Rights of Lender.** Without affecting the liability of any Maker, indorser, surety, or guarantor, Lender may, without notice, accept partial payments, release or impair any collateral security for the payment of this Note or agree not to sue any party liable on it. Lender may apply prepayments, if permitted, to such future installments as it elects. Lender may without notice to Maker apply payments made by or for Maker to any obligations of Maker to Lender. Without affecting the liability of any indorser, surety or guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

**8. Obligations and Agreements of Maker.** The obligations under this Note of all Makers are joint and several. All Makers, indorsers, sureties, and guarantors agree to pay all costs of collection before and after judgment, including reasonable attorneys' fees (including those incurred in successful defense or settlement of any counterclaim brought by Maker or incident to any action or proceeding involving Maker brought pursuant to the United States Bankruptcy Code) and waive presentment, protest, demand and notice of dishonor. Maker agrees to indemnify and hold harmless Lender, its directors, officers, employees and agents, for, from and against any and all claims, damages, judgments, penalties, and expenses, including reasonable attorneys' fees, arising directly or indirectly from credit extended under this Note or the activities of Maker. This indemnity shall survive payment of this Note. Each Maker acknowledges that Lender has not made any representations or warranties with respect to, and that Lender does not assume any responsibility to Maker for, the collectability or enforceability of this Note or the financial condition of any Maker. Each Maker has independently determined the collectability and enforceability of this Note. Maker represents that the legal name of Maker and the address of Maker's principal residence are as set forth on page 1. Maker shall not change its legal name or address without providing at least 30 days prior written notice of the change to Lender.

**9. Interpretation.** This Note is intended by Maker and Lender as a final expression of this Note and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing. This Note benefits Lender, its successors and assigns, and binds Maker and Maker's heirs, personal representatives, successors and assigns. The validity, construction and enforcement of this Note are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. Invalidity or unenforceability of any provision of this Note shall not affect the validity or enforceability of any other provisions of this Note.

| INTEREST PAID TO | | | | | | $ | |
|---|---|---|---|---|---|---|---|
| MO. | DAY | YR. | DATES PAID | INITIALS | INTEREST | PRINCIPAL | BALANCE DUE |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

BUSINESS & CONSUMER
W. B. A. | GP 235 (8/04) | 11065
© 2004 Wisconsin Bankers Association / Distributed by FIPCOE

DOCUMENT NO.

1390388

REGISTER'S OFFICE
WINNEBAGO COUNTY, WI
RECORDED ON

03/06/2006  01:42PM

JULIE PAGEL
REGISTER OF DEEDS

RECORDING FEE      11.00
TRANSFER FEE
# OF PAGES         1

## REAL ESTATE SECURITY AGREEMENT

To induce STATE BANK OF NEWBURG

300 CONGRESS DRIVE, P.O. BOX 20, NEWBURG, WI 53060 ("Lender")
to extend credit at any time in any manner or amount directly or indirectly to or for the benefit of one or more of the undersigned or at their request, any of which are additional consideration, the undersigned ("Customer", whether one or more) jointly and severally:

1. Represents and warrants that Customer owns (or with spouse owns) real estate ("Property") located at 334 4TH ST, NEENAH, WI 54956

Winnebago _____ County, Wisconsin, more completely described as:

LOT EIGHTY-THREE (83), BLOCK 'B', PLAT OF TOWN OF THE ISLAND, FIFTH WARD, CITY OF NEENAH, WINNEBAGO COUNTY, WISCONSIN, EXCEPTING THEREFROM THE WEST 60 FEET THEREOF.

Recording Area

Name and Return Address

STATE BANK OF NEWBURG
300 CONGRESS DRIVE, P.O. BOX 20
NEWBURG, WI 53060

0500540000

(This ___ is ___ homestead property.)
Parcel Identifier Number

☐ If checked here, the description continues or appears on attached sheet(s).

2. Grants Lender a continuing lien on the Property to secure all debts, obligations and liabilities arising out of all credit previously granted, all credit contemporaneously granted and all credit granted in the future by Lender to any Customer, to any Customer and another, or to another guaranteed or endorsed by any Customer, if any, to the extent not prohibited by the Wisconsin Consumer Act, if applicable ("Obligations").

3. Covenants and agrees:

   (a) that acting alone Customer may grant a continuing lien on the Property;

   (b) not to sell, mortgage, otherwise convey or encumber the Property on or after this date, and to keep the Property free from all liens and encumbrances;

   (c) not to incur any new indebtedness or increase any outstanding indebtedness secured by any present lien upon the Property other than the lien created by this Agreement;

   (d) to pay all taxes and assessments levied against the Property when due, keep all improvements on the Property in good repair and insured to the maximum insurable value or the amount of the Obligations, whichever is less, against loss or damage through fire and extended coverage insurance through an agent or insurer Customer is free to select and, at Lender's request, exhibit the policies to Lender;

   (e) that should the improvements on the Property be damaged Customer will, at Lender's option, repair or rebuild them or apply the insurance proceeds against the Obligations to Lender;

   (f) that if there is a default under any Obligation secured by this Agreement, or Customer fails timely to observe or perform any of Customer's covenants contained in this Agreement, then at the option of Lender, each Obligation will become immediately payable unless notice to Customer and an opportunity to cure are required by § 425.105, Wis. Stat., if applicable, or the document evidencing any Obligation and, in that event, the Obligation will become payable if the default is not cured as provided in that statute or the document evidencing that Obligation or as otherwise provided by law. In the event of a foreclosure hereunder Customer agrees to be bound by Secs. 846.101 and 846.103, Wis. Stats., as the same may be amended or renumbered from time to time, and Lender may grant, sell and convey the Property at public sale and may make and execute to the purchaser good and sufficient deeds of conveyance pursuant to statute. Upon the commencement or during the pendency of any action at law or equity hereunder, the court in which such action is brought may appoint a receiver of the Property, including homestead interest, and may empower said receiver to collect the rents, issues and profits of said Property during the pendency of such action, and may order such rents, issues and profits, when so collected, to be held and applied as the court may from time to time direct; and

   (g) to pay all reasonable attorneys' fees incurred by Lender in enforcing these provisions to the extent not prohibited by the Wisconsin Consumer Act if applicable.

4. This Agreement binds Customer(s) and their heirs, personal representatives, successors and assigns and benefits Lender, its successors and assigns. The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. This Agreement is intended by Customer and Lender as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing.

### NOTICE TO CUSTOMER IN A TRANSACTION GOVERNED BY THE WISCONSIN CONSUMER ACT

(a)   Do not sign this if it contains any blank spaces.

(b)   You are entitled to an exact copy of any agreement you sign.

(c)   You have the right at any time to pay in advance the unpaid balance due under this Agreement and you may be entitled to a partial refund of the finance charge.

_____ (SEAL)

Type of Organization

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

Signed and Sealed  March 3, 2006
(Date)

_Warren C. Krueger_ (SEAL)
WARREN G KRUEGER

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

═══ AUTHENTICATION ═══ OR ═══ ACKNOWLEDGEMENT ═══

Signatures of _____

_____

authenticated this ____ day of ____

_____

Title: Member State Bar of Wisconsin or authorized under § 706.06, Wis. Stats.

This instrument was drafted by

J. H. ISSLEMAN

STATE OF WISCONSIN

County of Washington } ss.

This instrument was acknowledged before me on March 3, 2006
by WARREN G KRUEGER, A SINGLE MAN

(Name(s) of person(s))

as n/a

(Type of authority, e.g., officer, trustee, etc., if any)

of n/a

(Name of party on behalf of whom instrument was executed, if any)

_Douglas S. Hein_
* DOUGLAS S. HEIN
Notary Public, Wis.
My Commission Expires  09/14/2008

*Type or print name signed above.

STATE OF WISCONSIN        CIRCUIT COURT        WINNEBAGO COUNTY
BRANCH 5

---

STATE BANK OF NEWBURG

        Plaintiff,

    vs.

WARREN C. KRUEGER
CITIFINANCIAL MORTGAGE COMPANY, INC.

and

JPMORGAN CHASE BANK, N.A.

        Defendants.

Case No: **08 CV 1320**

Case Code: 30404
(Foreclosure of Mortgage)



---

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

---

This action having been commenced by the filing and service of the Summons and Complaint upon Defendants; and the above entitled action having been brought before the Court on Plaintiff's Affidavit of Default as to Defendant Warren G. Krueger, and on Plaintiff's Motion for Default Judgment as to Defendants Citifinancial Mortgage Company, Inc. and JP Morgan Chase Bank, N.A., in which Plaintiff recites the facts of Defendants' defaults; and the Plaintiff being entitled to entry of Judgment in the event of the Defendant Warren G. Krueger's default under the terms of the Stipulation and Ordered entered in this action on September 23, 2008, and the Plaintiff being entitled to entry of Judgment against Defendants Citifinancial Mortgage Company, Inc. and JP Morgan Chase Bank, N.A. for failing to answer the Plaintiff's Complaint; and it appearing that notice of such Affidavit of Default and Motion for Default Judgment was duly and timely served on all Defendants, and Plaintiff having appeared by its attorneys, Eustice, Laffey, Sebranek & Auby, S.C., by Joshua J. Kindkeppel; and the Court having been advised in the premises, the Court hereby makes and files the following Findings of Fact, Conclusions of Law, and Judgment in this matter:

l

## FINDINGS OF FACT

1.     Plaintiff, State Bank of Newburg, ("the Bank") is a Wisconsin Banking Corporation with its principal office and place of business located at 300 Congress Drive/Hwy. 33, P.O. Box 20, Newburg, Washington County, Wisconsin and is engaged in the banking business.

2.     Defendant, Warren C. Krueger ("Mortgagor Defendant"), is an adult resident of Wisconsin who presently resides at 334 4th Street, Neenah, Winnebago County, Wisconsin, and who is, by trade, a truck driver.

3.     Defendant Citifinancial Mortgage Company, Inc. is a foreign corporation duly authorized to engage in business in the State of Wisconsin with its principal office located at 1000 Technology Drive, MS #140, O'Fallon, Missouri.

4.     Defendant JP Morgan Chase Bank, N.A., is a foreign corporation with its principal office located at 270 Park Avenue, New York, New York, and whose registered agent for the State of Wisconsin is CT Corporation System, located at 44 E. Mifflin Street, Madison, WI 53703.

5.     On or about September 20, 2007, Mortgagor Defendant, for value received, duly made and executed and delivered a Business Note (the "Note") to Plaintiff and thereby promised to pay to Plaintiff, or to holder of the Note, the sum of One Hundred Ninety Thousand Nineteen and 08/100 Dollars ($190,019.08), together with interest thereon, from and after September 20, 2007; attached to the Complaint as Exhibit A is a true and correct copy of the Note  and incorporated herein by reference as if fully set forth.

6.     To secure repayment of the Note, on or about March 3, 2006, Mortgagor Defendant executed and delivered to Plaintiff a Real Estate Security Agreement ("RESA") on real estate located in the City of Neenah, Winnebago County, Wisconsin; attached to the Complaint as Exhibit B and incorporated herein by reference as though fully set forth is a true and correct copy of the RESA.

7.     The real estate at issue is more particularly described as follows:

> Lot Eighty-Three (83), Block "B", Plat of the Town of the Island, Fifth Ward, City of Neenah, Winnebago County, Wisconsin, Excepting therefrom the West 60 Feet Thereof.

2

Tax Parcel Number: 805-0054

Street Address: 334 Fourth Street, Neenah, WI 54956

(the "Property").

8.    The RESA was duly recorded on March 6, 2006, in the Winnebago County Register of Deeds' Office, as Document Number 1390388.

9.    To further secure repayment of the Note, and for value received, Mortgagor Defendant executed in Washington County, Wisconsin, and delivered to Plaintiff Chattel Security Agreements (the "Security Agreements"); attached to the Complaint as Exhibit C and incorporated herein by reference as though fully set forth are true and correct copies of the Security Agreements.

10.    Pursuant to the Security Agreements, Mortgagor Defendant granted to Plaintiff security interests in certain property described therein as Collateral, and Plaintiff's security interests in the property described in the Security Agreement were duly perfected.

11.    Pursuant to the Security Agreements, Plaintiff holds a duly perfected security interest in the property of Mortgagor Defendant described in the Security Agreements as Collateral, namely:

- 2005 Kenworth W900L Conventional Truck/Tractor VIN # 1XKWDB9X25J099338; and

- 2006 Doonan Model 482VB14 Step Deck Trailer VIN # 1D9BG48216120802

(the "Collateral").

12.    Pursuant to the terms of the Note, RESA and Security Agreements, the RESA and Security Agreements secure repayment of the Note.

13.    Plaintiff is still the lawful owner and holder of the Note, RESA and Security Agreements, and Plaintiff has not sold nor assigned the same.

14.    Mortgagor Defendant has defaulted on the Note by virtue of Mortgagor Defendant's failure to make the required payments when due.

3

15.     By reason of Mortgagor Defendant's default, and pursuant to the Note, Plaintiff has declared and does hereby declare the entire balance of Mortgagor Defendant's obligations to Plaintiff immediately due and payable.

16.     As of June 10, 2009 there is due and owing to Plaintiff on account of such financing to Mortgagor Defendant, evidenced by the Note, the following sums:

| | | |
|---|---|---:|
| Principal | $ | 167,216.97 |
| Interest | | 836.14 |
| Late Charges | | 2,946.51 |
| Attorneys' Fees & Costs | | 4,678.51 |
| Total | $ | 175,678.13 |

Interest continues to accrue from and after June 10, 2009, on the unpaid principal balances at the rate set forth in the Note plus legal costs, disbursements and attorneys' fees. All such interest and costs are, and shall be, part of the obligations secured.

17.     Plaintiff has not been able to inspect the Collateral and is, therefore, unable to determine the exact value of the Collateral but reasonably believes that the value of the Collateral has diminished substantially since the security interest was granted to Plaintiff.

18.     Plaintiff reasonably believes the Collateral's value to be substantially less than the obligations due Plaintiff on the Note.

19.     Pursuant to the terms of the Note and Security Agreements, Plaintiff is entitled to immediate possession of the Collateral and is entitled to have Mortgagor Defendant assemble and prepare such Collateral for removal.

20.     The Collateral may be located at 334 4th Street, Neenah, Wisconsin, but Plaintiff is entitled to immediate possession of the Collateral wherever located.

21.     None of the Collateral has been taken by any public authority for any tax assessment or fine.

22.     Mortgagor Defendant has failed and refused to allow Plaintiff to obtain possession of the Collateral, and the Collateral is wrongfully detained by Mortgagor

4

Defendant from Plaintiff.

23. Plaintiff does not know the cause of Mortgagor Defendant's detention of the Collateral; however, upon information and belief, and to Plaintiff's best knowledge, Mortgagor Defendant has no basis to refuse turnover of the Collateral to Plaintiff.

24. The Property cannot be sold in part or parcel without material injury to the rights of the parties to this action.

25. The Property constitutes the homestead of the Mortgagor Defendant.

26. Plaintiff, pursuant to the provisions for election by Mortgagee under Wis. Stat. §846.101 and pursuant to the provision for election contained in the RESA, has expressly elected to accept said provision for sale of the Property after the expiration of six (6) months from the date of entry of judgment and has further elected, stipulated and agreed to waive judgment for any deficiency which may remain due to Plaintiff after sale of the Property, and that said Mortgagor Defendant may remain in possession of the Property and be entitled to the rents, issues and profits therefrom to the date of confirmation of sale by the Court unless said Mortgagor Defendant abandons the Property.

27. No proceedings have been at law or otherwise for the recovery of sums secured by the Note by Plaintiff, except the appropriate action, and no part thereof has been made by or collected from Mortgagor Defendant except as set forth and referenced herein.

28. The Note, RESA and Security Agreements provide that Mortgagor Defendant is obligated to pay Plaintiff's court costs and reasonable attorneys' fees incurred herein in enforcing Plaintiff's rights and remedies.

29. Defendant Citifinancial Mortgage Company, Inc. is named a Defendant in this action by virtue of any lien, interest or claim it may have in the Property with respect to a Mortgage executed by Mortgagor Defendant in the original principal amount of $60,500 to First Funding Group, LLC, and recorded with the Winnebago County Register of Deeds Office on March 8, 2006, as Document No. 1390661; said Mortgage was assigned to Defendant Citifinancial Mortgage Company, Inc. by Assignment of Mortgage recorded with the Winnebago County Register of Deeds Office on June 6, 2006 as Document No. 1400568. Any liens, claims or interests of Defendant Citifinancial Mortgage Company,

5

Inc. are subsequent and subordinate to the interests of Plaintiff in the Property. No personal claim is made against said Defendant.

30.     Defendant JPMorgan Chase Bank, N.A. is named a Defendant in this action by virtue of any lien, interest or claim it may have in the Property with respect to a Mortgage executed by Mortgagor Defendant in the original principal amount of $25,000, and recorded with the Winnebago County Register of Deeds Office on February 26, 2007, as Document No. 1426558.   Any liens, claims or interests of Defendant JP Morgan Chase Bank, N.A. are subsequent and subordinate to the interests of Plaintiff in the Property. No personal claim is made against said Defendant.

## CONCLUSIONS OF LAW AND JUDGMENT

1.     The above Findings of Fact are incorporated herein by reference as if fully set forth.

2.     As of June 10, 2009 there is due and owing to Plaintiff on account of such financing to Mortgagor Defendant, evidenced by the Note, the following sums:

| | |
|---|---|
| Principal | $ 167,216.97 |
| Interest | 836.14 |
| Late Charges | 2,946.51 |
| Attorneys' Fees & Costs | 4,678.51 |
| Total | $ 175,678.13 |

Interest continues to accrue on the Note at the rates set forth in the Note.   In addition, pursuant to the Notes and related loan documents described below, Plaintiff is entitled to collect its attorneys' fees and expenses incurred to collect the sums due and owing, including, without limitation, those incurred to date.

3.     The real property subject to and affected by this Action is legally described as:

> Lot Eighty-Three (83), Block "B", Plat of the Town of the Island, Fifth Ward, City of Neenah, Winnebago County, Wisconsin, Excepting therefrom the West 60 Feet Thereof.
>
> Tax Parcel Number: 805-0054
> Street Address: 334 Fourth Street, Neenah, WI 54956

6

(the "Property").

4. The Property is the homestead of Mortgagor Defendant, and the Property cannot be sold in part or parcel without material injury to the rights of the parties to this action.

5. Plaintiff is entitled to Judgment of Foreclosure and sale of the Property in the usual form, adjudging the sale of the Property, subject to the provisions of the statutes in such cases, with the provisions for sale of the Property after six (6) months from the date of entry of Judgment herein; that out of the monies arising from said sale, after deducting the amount of the fees and expenses of said sale, the Sheriff shall deposit the balance with the Clerk of Court who, upon confirmation, shall pay to Plaintiff, or Plaintiff's attorney, the amount judged due to Plaintiff, including disbursements and attorneys' fees, and interest thereon to the date of sale or payment, at the rate of twelve (12) percent per year or so much thereof as the proceeds of said sale will pay the same; that, in the event there is any surplus thereafter, the Clerk shall hold such surplus money subject to the further order of the Court, and that the Sheriff shall make a report of such sale and file it with the Clerk of this Court as required by law.

6. Plaintiff may pay any prior liens on the Property and any taxes, insurance premiums, repairs and other necessary expenses, whether due or not, or which shall hereafter become due, and have a lien on the Property for the amount so paid with interest thereon from the date of payment at the rate of twelve percent (12%) per year, and that in the event any such payments are made, Plaintiff may obtain an order directing the amounts so paid, with interest, be added to the amount due to the Bank from Mortgagor Defendant.

7. The interests or liens of the Defendants and all persons claiming under them and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein are all subsequent, subordinate and junior to the interest of Plaintiff, and the Defendants and all persons claiming under them and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein are forever barred and foreclosed of all right, title and interest in and to said premises, except the right to redeem as provided by law or as provided herein.

8. The Defendants, their heirs, assigns, agents, employees, and all persons claiming under them, and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein shall be enjoined from in any way or manner

7

committing waste upon the Property, or taking or permitting any action which will in any way impair the value of the Property or failing to take action, which failure will in any way impair the value of the Property.

9. Plaintiff may take all steps necessary to secure and winterize the Property in the event it is abandoned by the Mortgagor Defendant and has become unoccupied.

10. Plaintiff holds a duly perfected security interest in the Collateral, and Plaintiff is entitled to the immediate possession and delivery of the Collateral, wherever located, and for the issuances of Writs and Orders necessary and appropriate to obtain such possession, including the right to liquidate the Collateral and to apply the net proceeds against the sums due and owing Plaintiff. The Judgment corresponding to these Conclusions of Law shall constitute a Writ of Replevin to the Sheriff in whose county any of the Collateral can be found and, upon being delivered, the Judgment or a certified copy thereof, or a Writ issued by the Clerk in accordance therewith, said Sheriff shall take possession of any such items of the Collateral and deliver said items to Plaintiff. If any of the Collateral is found within a building or enclosure, the Sheriff is empowered to enter the same and to take possession of such items and to deliver these to Plaintiff. The Sheriff further is empowered to use whatever force is necessary to access such building or enclosure and to remove and take possession of such items of Collateral. The Defendants and their agents and assigns are enjoined from interfering with, disrupting or harassing Plaintiff or the Sheriff in their efforts to take possession of, maintain and sell said items of the Collateral.

11. Plaintiff is entitled to recover, as part of the amounts adjudged due Plaintiff, Plaintiff's costs, disbursements and attorneys' fees herein (both before and after judgment).

12. All the Defendants and all persons claiming under them and all persons claiming an interest in the Collateral first appearing of record after perfection of Plaintiff's security interest in the Collateral shall be forever barred and foreclosed of all right, title and interest in and to said Collateral, except the right to redeem as provided by law or as provided herein.

13. All Defendants, their heirs, assigns, agents, employees and all persons claiming under them, and all persons claiming an interest in the Collateral first appearing of record after perfection of Plaintiff's security interest in the Collateral herein shall be enjoined from

8

in any way or manner committing waste upon the Collateral, or taking or permitting any action which will in any way impair the value of the Collateral or failing to take any action, which failure will in any way impair the value of the Collateral.

14.     The Defendants are hereby restrained from any and all efforts and actions to sell, transfer, alienate, encumber, move, relocate, dismantle or alter any and all of the Collateral except only pursuant to prior written authorization of Plaintiff unless this Court shall otherwise direct.

**NOW, THEREFORE**, on motion of Eustice, Laffey, Sebranek & Auby, S.C., attorneys for the Plaintiff;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

15.     The above Findings of Fact and Conclusions of Law are incorporated herein by reference as if fully set forth.

16.     As of June 10, 2009 there is due and owing to Plaintiff on account of such financing to Mortgagor Defendant, evidenced by the Note, the following sums:

| | |
|---|---|
| Principal | $ 167,216.97 |
| Interest | 836.14 |
| Late Charges | 2,946.51 |
| Attorneys' Fees & Costs | 4,678.51 |
| Total | $ 175,678.13 |

Interest continues to accrue on the Note at the rates set forth in the Note. In addition, pursuant to the Note and related loan documents described below, Plaintiff is entitled to collect its attorneys' fees and expenses incurred to collect the sums due and owing, including, without limitation, those incurred to date.

17.     The real property subject to and affected by this Action is legally described as:

Lot Eighty-Three (83), Block "B", Plat of the Town of the Island, Fifth Ward, City of Neenah, Winnebago County, Wisconsin, Excepting therefrom the West 60 Feet Thereof.

Tax Parcel Number: 805-0054
Street Address: 334 Fourth Street, Neenah, WI 54956

(the "Property").

9

18.     The Property is the homestead of Mortgagor Defendant, and the Property cannot be sold in part or parcel without material injury to the rights of the parties to this action.

19.     Plaintiff is entitled to Judgment of Foreclosure and sale of the Property in the usual form, adjudging the sale of the Property, subject to the provisions of the statutes in such cases, with the provisions for sale of the Property after six (6) months from the date of entry of Judgment herein; that out of the monies arising from said sale, after deducting the amount of the fees and expenses of said sale, the Sheriff shall deposit the balance with the Clerk of Court who, upon confirmation, shall pay to Plaintiff, or Plaintiff's attorney, the amount judged due to Plaintiff, including disbursements and attorneys' fees, and interest thereon to the date of sale or payment, at the rate of twelve (12) percent per year or so much thereof as the proceeds of said sale will pay the same; that, in the event there is any surplus thereafter, the Clerk shall hold such surplus money subject to the further order of the Court, and that the Sheriff shall make a report of such sale and file it with the Clerk of this Court as required by law.

20.     Plaintiff may pay any prior liens on the Property and any taxes, insurance premiums, repairs and other necessary expenses, whether due or not, or which shall hereafter become due, and have a lien on the Property for the amount so paid with interest thereon from the date of payment at the rate of twelve percent (12%) per year, and that in the event any such payments are made, Plaintiff may obtain an order directing the amounts so paid, with interest, be added to the amount due to the Bank from Mortgagor Defendant.

21.     The interests or liens of the Defendants and all persons claiming under them and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein are all subsequent, subordinate and junior to the interest of Plaintiff, and the Defendants and all persons claiming under them and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein are forever barred and foreclosed of all right, title and interest in and to said premises, except the right to redeem as provided by law or as provided herein.

22.     The Defendants, their heirs, assigns, agents, employees, and all persons claiming under them, and all persons claiming an interest in the Property first appearing of record after the filing of the Lis Pendens herein shall be enjoined from in any way or manner

10

committing waste upon the Property, or taking or permitting any action which will in any way impair the value of the Property or failing to take action, which failure will in any way impair the value of the Property.

23.     Plaintiff may take all steps necessary to secure and winterize the Property in the event it is abandoned by the Mortgagor Defendant and has become unoccupied.

24.     Plaintiff holds a duly perfected security interest in:

- 2005 Kenworth W900L Conventional Truck/Tractor
  VIN # 1XKWDB9X25J099338; and

- 2006 Doonan Model 482VB14 Step Deck Trailer
  VIN # 1D9BG48216120802

(the "Collateral"),

and Plaintiff is entitled to the immediate possession and delivery of the Collateral, wherever located, and for the issuances of Writs and Orders necessary and appropriate to obtain such possession, including the right to liquidate the Collateral and to apply the net proceeds against the sums due and owing Plaintiff. This Judgment shall constitute a Writ of Replevin to the Sheriff in whose county any of the Collateral can be found and, upon being delivered, this Judgment or a certified copy thereof, or a Writ issued by the Clerk in accordance therewith, said Sheriff shall take possession of any such items of the Collateral and deliver said items to Plaintiff.  If any of the Collateral is found within a building or enclosure, the Sheriff is empowered to enter the same and to take possession of such items and to deliver these to Plaintiff.  The Sheriff further is empowered to use whatever force is necessary to access such building or enclosure and to remove and take possession of such items of Collateral. The Defendants and their agents and assigns are enjoined from interfering with, disrupting or harassing Plaintiff or the Sheriff in their efforts to take possession of, maintain and sell said items of the Collateral.

25.     Plaintiff is entitled to recover, as part of the amounts adjudged due Plaintiff, Plaintiff's costs, disbursements and attorneys' fees herein (both before and after judgment).

26.     All the Defendants and all persons claiming under them and all persons claiming an interest in the Collateral first appearing of record after perfection of Plaintiff's security interest in the Collateral shall be forever barred and foreclosed of all right, title and interest

11

in and to said Collateral, except the right to redeem as provided by law or as provided herein.

27.    All Defendants, their heirs, assigns, agents, employees and all persons claiming under them, and all persons claiming an interest in the Collateral first appearing of record after perfection of Plaintiff's security interest in the Collateral herein shall be enjoined from in any way or manner committing waste upon the Collateral, or taking or permitting any action which will in any way impair the value of the Collateral or failing to take any action, which failure will in any way impair the value of the Collateral.

28.    The Defendants are hereby restrained from any and all efforts and actions to sell, transfer, alienate, encumber, move, relocate, dismantle or alter any and all of the Collateral except only pursuant to prior written authorization of Plaintiff unless this Court shall otherwise direct.

Dated this ____ day of July, 2009.

BY THE COURT:

Honorable William H. Carver
Branch 5

STATE OF WISCONSIN  }
COUNTY OF WINNEBAGO }

This document is a full, true and correct copy of the original on file of record in my office and has been compared by me.

Attest: _____ 20___

_____, Clerk

_____ Deputy Clerk

SEAL

12